Anderson, J.
delivered the opinion of the court.
The ease is briefly this, as presented by the record. John B. Larue executed his bond, jointly with another as his security, to Mrs. Cloud, on the 28th day of April 1861, for $500 borrowed money, payable on demand. About the 1st of March 1862, he received a letter from Mrs. Cloud, requesting payment. He thereupon obtained a check from his son, William A. Larue, in these words: “Winchester, Va., March 4th, 1862. Current Funds. Bank of the Valley in Virginia pay to John B. Larue, or bearer, five hundred dollars” ; which he endorsed and sent by his son to Mrs. Cloud, with instructions to hand it to her, “or failing to see her, to put it in the hand of some trusty friend to hand to her.” His son failed to see her, and handed the check to William A. Buck, a brother-in-law of his father, at whose house Mrs. Cloud frequently stayed, with directions to hand it to her. Buck very soon after notified Mrs. Cloud that he had such check for her. And in the course of a few days Mountjoy Cloud, a son of Mrs. Cloud, called upon him for the check and got it. The next day, *515 or the day after—witness thought the evening of the next day—the check was returned to Buck, with the statement that it was taken tp Winchester, and there learning that the bank was shut up and its effects and money taken south, it was returned. Buck received it and put it away among his papers ; but did not inform Larue of the fact that it had been returned, Was that such an acceptance of the check by Mrs. Cloud as im- • posed on her the duty and burden of following the bank up to Farmville, and there presenting it for payment?
Mrs. Cloud was not bound to receive the check at all. And she might have agreed to receive it as a payment of the bond, or she might have agreed to receive it conditionally and in a qualified sense. It was at her option. And the fact that it was promptly taken to Winchestei’, and that as soon as it was ascertained that the bank had been removed to Farmville, she returned it to the trusted friend of the drawer and endorser, who in this matter may be regarded as their agent; and the fact that he took it back, so far as the record shows, without objection, and filed it away amongst his papers, implies that she received it only for a qualified and limited purpose, to draw the money upon it at Winchester, to be applied as a credit upon the bond. But that if, for any cause, she could not draw the money upon it at Winchester, she was to have the privilege of returning it to Buck, from whom she received it, without affecting her right of action upon Larue’s bond. This is a fair inference from the acts of both parties—the act of Mrs. Cloud in promptly returning the check, and the act of Wm. A. Buck in receiving it without objection. Whether Buck had authority or not from the drawer and endorser of the check to make such a qualified and conditional delivery of the check, cannot affect the liability of Mrs. Cloud, as there was no obligation on her part to accept it at all, if, as is inferable, she consented to only such a *516 qualified and conditional acceptance. And Buck being the holder of the check as the agent of the drawer and indorser for its delivery, she was not bound to look beyond him to his principals. And having been put in possession of the check transiently for a brief period by Buck, and for a special purpose, and it being wholly unavailing for that purpose, she returned it to Buck, without having made any use of it, and he having received it, her relations to her debtor were in no wise changed by the transaction. She stood to him, and he to her, precisely as if there had been no sort of delivery of the check to her. The duty devolved upon Buck, and not upon her, to notify him that she was unwilling to accept of the check, and that no money had been paid upon it. It was no more her duty to inform the drawer or indorser of the check, after she returned it to their agent and he accepted its return to him, than it would have been if she had never touched it. What might have been her duties and liabilities if she had retained the check is another question, and does not arise in this case.
Nor is she liable because of the subsequent delivery of the check to her son William, for the purpose of presenting it to the bank at Barmville, on account of the non-presentment at that place. The acceptance through him was qualified and conditional. His proposal to take it for presentation at Farmville, was upon the condition that he could get a furlough from the army, to which he belonged, and only in the event that he could get the money, which was predicated of his getting a furlough, was he to deliver the “note” (bond) to the agent of Larue. He could not succeed in getting the furlough, and promptly returned the check to the agent, who received it. This qualified acceptance of the check could not affect Mrs. Cloud’s right of action upon the bond, after the check was returned to the agent from whom it had been received and accepted by him.
Afterwards, in the latter part of the year 1863, Mrs. *517 Cloud agreed if William A. Buck, who still held the •check, would present, or cause it to be presented, at Farmville, and get Virginia bank money for it, that she would receive the same in payment of the bond. Buck, through a friend, presented the check to the bank at Farmville, and requested payment in that kind of currency. But the bank refused to pay in anything but Confederate money. Mrs. Cloud not being willing then to receive Confederate currency, which had become greatly depreciated, for her gold debt, the money was not drawn. And then Mr. Buck, it seems for the first time, informed Larue that the money had not been received upon the check.
That he had not received notice earlier can create no liability upon Mrs. Cloud, as we have seen. It is much to be regretted that Col. Larue should be subjected to this loss. But it is not just that it should fall upon Mrs. Cloud. Nor is she liable in law. By no act of hers, or failure to do an act, which the drawer and endorser had a right to require of her, have they sustained any loss. It was competent for the agent, or his principal, the endorser, if he had been informed by his agent of the status, to have caused the check to be presented at Farm-ville, to have drawn the money, and tendered it to Mrs. Cloud in payment of the bond. And so desirous was she to have received payment, that it is probable she would have received it in Confederate money if it had been tendered before it became so much depreciated. For she seems not to have objected to the check as late as October 1862, because it was made payable in “current funds.”
Exception was taken by the defendant’s counsel in the lower court to the instructions given to the jury; and marked ability and much learning have been shown in argument by the counsel of plaintiff in error here, in support of those exceptions. But we do not deem it necessary to decide the many questions raised upon the *518 instructions, because we think, upon the facts certified, the verdict is right on other grounds, and ought not to "have been otherwise, if the instructions objected to had: been rejected. Wilson v. Ches, & Ohio R. R. Co., 21 Gratt. p. 664; Colvin v. Menifee, 11 Gratt. 87. And, therefore, that¿it could not benefit the plaintiff in error to reverse the judgment on this ground and remand the-cause. We are of opinion, therefore, upon the whole-case, that the verdict of the jury is just and right, and that the court did not err in overruling the motion to set it aside and grant a new trial, and that the judgment should be affirmed.
Judgment appirmed.